UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE B. CRUZ,<br>    *Plaintiff*,<br><br>v.<br><br>REBECCA BARRY *and* RICHARD BANGO,<br>    *Defendants*. | No. 3:24-cv-000667 (KAD) |

**ORDER GRANTING [64] [73] MOTIONS TO DISMISS**

Plaintiff Jose B. Cruz has filed this civil rights action *pro se* and *in forma pauperis* against City of Shelton Police Officer Richard Bango (Defendant Bango) and Supervisory Assistant State's Attorney Rebecca Barry (Defendant Barry) pursuant to 42 U.S.C. § 1983. He alleges violations of his constitutional rights arising out of his arrest by Defendant Bango in 2021 and subsequent prosecution by Defendant Barry. Both Defendants now move to dismiss Plaintiff's Amended Complaint. For the reasons that follow, their motions to dismiss are GRANTED.

### STANDARD OF REVIEW

It is well established that to survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Charles v. Orange Cnty.*, 925 F.3d 73, 81 (2d Cir.

2019) (same). In addition, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). Finally, courts must construe a *pro se* complaint with "special solicitude," such that it is interpreted to raise the "strongest claims that [the complaint] suggests"—although this does not excuse *pro se* complaints from stating a plausible claim for relief. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## ALLEGATIONS

Plaintiff initiated this suit in April 2024, and thereafter amended his Complaint. *See* Doc. #1; Doc. #18. He alleges that he has suffered violations of his constitutional rights, privileges, or immunities under 42 U.S.C. § 1983. *See* Doc. #18 at 2-4. Although unclear from the operative Complaint, it seems that the genesis of the relevant events lies in Plaintiff's 2021 arrest for threatening his former attorney.

On July 9, 2024, Plaintiff filed a series of exhibits, Docs. #58-59, which include the arrest warrant application, court records, various correspondence, his pistol permit, and other documents. The exhibits are offered without context but were filed *before* either defendant filed a motion to dismiss. The Court therefore construes them as exhibits to the Amended Complaint and accordingly considers them in the context of this motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d. Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247-48 (2d Cir. 2017) (same).

The Amended Complaint and its various exhibits reveal that Plaintiff's arrest followed a phone call between Plaintiff—then residing in Shelton, Connecticut—and the secretary of the

2

New York Chief Judge in Albany. *See* Doc. #58 at 3. Plaintiff apparently intended to complain about the New York courts' process with regards to an ethics complaint against his former attorney, Angel Castro. *Id.* at 4. Instead, however, Plaintiff allegedly made threatening remarks—including that he wanted to murder Castro. *Id.* at 3. Upon learning of this telephone call, Defendant Bango contacted Castro, who stated that he feared Plaintiff and confirmed that Plaintiff is a frustrated, unhappy former client who had been harassing Castro for about two years. *Id.* at 4; *see also* Doc. #59-9 at 8 (Castro stating that Plaintiff had urged him to commit suicide, filed false police reports against Castro, and sent profane communications to Castro). While Plaintiff later denied having threatened to murder Castro when questioned by an officer, he purportedly asked the same officer, "What do I have to do[,] call the mob to kill him[?]" Doc. #58 at 4. Plaintiff was subsequently arrested after an arrest warrant issued in January of the same year. *See* Doc. #18 at 6.

As to the allegations against Defendant Bango, the Amended Complaint alleges that he "did not perform proper investigative procedures" and that he "did not request corraborative [sic] evidence" provided by Castro. Doc. #18 at 2. The Complaint alleges that in 2021, Defendant Bango contacted Castro, who proceeded to "lie and provide misinformation" that Defendant Bango did not corroborate. *See id.* at 6. Under a liberal construction of these allegations, Plaintiff seems to assert claims for failure to investigate, false arrest, and malicious prosecution.

As to Defendant Barry, Plaintiff alleges that her prosecution of Plaintiff was malicious insofar as she was also "using the lies that" Castro was telling her, and that she "[n]ever asked [Castro] to provide evidence to support his allegations." *Id.* at 3; *see also id.* at 6. Plaintiff seeks relief in the amount of $1 million, *see id.* at 5, because, as he alleges, Defendant Barry

3

"proceeded to ruin my life and more importantly made my children suffer," and that he lost a job offer and "had a stroke due to stress and aggravation." *Id.* at 7.

## DISCUSSION

42 U.S.C. § 1983, under which Plaintiff proceeds, provides in pertinent part: "Every person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**Defendant Bango**

The Court begins its analysis with Plaintiff's claims against Richard Bango. The core, sum, and substance of Plaintiff's claim against Defendant Bango is that Defendant Bango did not perform a proper investigation before seeking his arrest. *See* Doc. #18 at 3. But it is well-settled that "[f]ailure to investigate is not a cognizable claim." *Westry v. City of Waterbury*, 2023 WL 3259878, at *5 (D. Conn. 2023); *see also Grega v. Pettengill*, 123 F. Supp. 3d 517, 536 (D. Vt. 2015) ("[D]istrict courts in this circuit have consistently declined to recognize a claim of 'failure to investigate' as a violation of due process giving rise to a damages action.") (collecting cases); *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) (noting that "there is no constitutional right to an adequate investigation"). The courts so holding have explained that this must be so in order to protect the "significant level of . . . discretion" afforded to law enforcement in the course of their investigations of criminal or possible criminal acts. *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010).

4

Although not clear, to the extent that Plaintiff is making a false arrest or malicious prosecution claim against Defendant Bango, such claims also fail.[1] *See* Doc. #66 at 1. "To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 111 (D. Conn. 2019).[2] Under Connecticut law, prevailing on either a malicious prosecution or a false arrest claim requires demonstrating that the defendant acted without probable cause. *See McHale v. W.B.S. Corp.*, 187 Conn. 445, 447 (1982) (malicious prosecution); *Campbell v. Porter*, 212 Conn. App. 377, 390 (2022) (false arrest). Therefore, "[t]he existence of probable cause is a complete defense to claims of false arrest and malicious prosecution under both federal and Connecticut law." *Chase*, 360 F. Supp. 3d at 112 (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 78-79 (2d Cir. 2008); *Walczyk v. Rio*, 496 F.3d 139, 152 n.14 (2d Cir. 2007); *Johnson v. Ford*, 496 F.Supp.2d 209, 213 (D. Conn. 2007)). While probable cause is presumed as a matter of law when an arrest is made pursuant to a warrant issued by a neutral magistrate, "[a] plaintiff may overcome this presumption by showing that '*the officer submitting the probable cause affidavit* knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" *Id.* at 112-13 (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993)) (emphasis added).

---

[1] By notices filed on the docket, Plaintiff asserts that he intended to name both defendants in the malicious prosecution claim. *See* Docs. #65-66.

[2] "The Fourth Amendment prohibits 'unreasonable searches and seizures.'" *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (quoting U.S. Const. amend. IV). "For a seizure to be reasonable, it must generally be supported by probable cause." *Mara v. Rilling*, 921 F.3d 48, 69 (2d Cir. 2019). "Probable cause 'to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Martel v. Town of S. Windsor*, 562 F. Supp. 2d 353, 358 (D. Conn. 2008), *aff'd*, 345 Fed. App'x 663 (2d Cir. 2009).

Plaintiff's allegations and exhibits reveal that an arrest warrant was issued after being submitted by Sergeant William Serrano of the Shelton Police Department, signed by Defendant Barry, and then presented to a superior court judge. *See* Doc. #58 at 3-5. Accordingly, there is a presumption under the law that there was probable cause for his arrest and neither a false arrest nor a malicious prosecution claim is plausibly alleged. And Plaintiff's allegations do not rebut this presumption. First, Defendant Bango was not "the officer submitting the probable cause affidavit." *Chase*, 360 F. Supp. 3d at 113. Second, Plaintiff asserts only that Defendant Bango did not properly investigate Castro's "lies," as discussed, not actionable conduct. Further, even if the issuance of the warrant by a superior court judge does not provide an absolute defense to these claims, "an arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). And "a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000); *see also Mayo v. City of New Britain*, 2021 WL 681146, at *6 (D. Conn. 2021); *Figueroa v. Mazza*, 825 F.3d 89, 102 (2d Cir. 2016) (explaining that the probable cause inquiry is an objective one). Accordingly, the issuance of the warrant creates a presumption of probable cause that Plaintiff fails to rebut.

Because failure to investigate is not a cognizable claim and because Plaintiff does not plausibly allege either false arrest or malicious prosecution as to Defendant Bango, all claims against Defendant Bango are dismissed with prejudice.

**Defendant Barry**

Plaintiff alleges that Defendant Barry engaged in malicious prosecution when she failed to "corraborate [sic] allegations" and when she "[n]ever asked [Castro] to provide evidence to support his allegations." Doc. #18 at 3. Plaintiff's claim fails because state prosecutors are protected by absolute prosecutorial immunity from section 1983 suits for damages arising out of actions taken within the scope of their prosecutorial duties. *See Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995). The Supreme Court has held that any act "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). And the Second Circuit has elaborated that, in determining whether the immunity applies, courts should employ a functional approach: "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Hill*, 45 F.3d at 661 (alterations and quotation marks omitted); *see also Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (same).

Employing this "functional approach," it is manifest that the allegations of wrongdoing against Defendant Barry all concern actions that are woven into the very fabric of a prosecutor's job. Plaintiff contends that Defendant Barry signed an arrest warrant against him and that she used the "lies that Angel Castro was telling her," "did not corraborate [sic] [those] allegations," and used Castro as her "main witness." Doc. #18 at 3, 6. None of these allegations are sufficient to strip Defendant Barry of her prosecutorial immunity.

First, applying for, signing, and filing an arrest warrant is conduct protected by absolute immunity. *See Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). To put a finer point on it: A prosecutor's conduct "in applying for a warrant for an individual's arrest is closely associated

7

with the initiation of judicial proceedings and conducting a trial." *Sheehan v. Colangelo*, 53 Fed. App'x 584, 586 (2d Cir. 2002). An exception to this absolute immunity arises where a prosecutor personally attests to the truth of the averments in an application for an arrest warrant, *see Kalina*, 522 U.S. at 129. When that happens, the prosecutor acts more as a witness than an advocate. *Id.* Plaintiff does not, however, allege that Defendant Barry made any averments in the application, let alone those attesting to the truth of the allegations.[3] And a review of the warrant application itself reveals that she did not.

Second, Defendant Barry's evaluation and use of the evidence Castro provided to her is protected conduct—even if the evidence turned out to be false. *See Levine v. Cnty. of Westchester*, 828 F. Supp. 238, 244 (S.D.N.Y. 1993) (explaining that prosecutorial immunity protects "prosecutors when charged with using false evidence") (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)); *see also Hill*, 45 F.3d at 662 (noting that prosecutorial immunity "attaches to the function the prosecutor is performing, not the way in which it is performed").

Because Plaintiff's allegations as to Defendant Barry all pertain to conduct that is "intimately associated with the judicial phase of the criminal process," she is protected by absolute prosecutorial immunity. *Imbler*, 424 U.S. at 410. All claims against Defendant Barry are therefore dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Barry's Motion to Dismiss [73] is GRANTED and Defendant Bango's Motion to Dismiss [64] is GRANTED. Plaintiff's motions to further amend his Complaint [65] [66], in which to add an allegation of malicious prosecution against

---

[3] In Connecticut, an arrest warrant application and affidavit in support thereof is generally completed by a law enforcement officer. It is thereafter presented for approval by a prosecutor who signs the application. The application and affidavit are then submitted to a judge of the Superior Court for review. Plaintiff's "First Exhibit," Doc. #58, reveals that this is precisely what happened in his case.

Defendant Bango, are DENIED as moot, those allegations having already been considered herein. The Clerk of Court is directed to close this case.

It is so ordered.

Dated at Bridgeport, Connecticut this 20th day of February 2025.

/s/
Kari A. Dooley
United States District Judge